IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN K. FIELDS and CHRISTINA FIELDS, h/w | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CLAUDE ANTHONY LEBERT and LEEGO TRUCKING, INC. | : | NO. 24-447 |
| | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                              August 19, 2025

Defendants, Claude Anthony Lebert ("Lebert") and Leego Trucking, Inc. ("Leego Trucking"), seek partial summary judgment in this diversity personal injury/motor vehicle accident case brought by Plaintiffs, Ryan K. Fields ("Fields") and Christina Fields, arguing that Defendants are entitled to judgment as a matter of law as to Fields' claims for punitive damages against both Defendants, and as to Fields' claims against Leego Trucking for negligent entrustment and negligent hiring, retention, and supervision. Because I find that genuine issues of material fact exist as to these claims and that Defendants are not entitled to judgment as a matter of law, I will deny the motion.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

According to the Complaint, at approximately 9:15 a.m. on February 25, 2022, Fields' Ford Fusion reached a red light on Center Valley Parkway (the "Parkway") near

---

[1] The facts presented are either not disputed or taken in the light most favorable to Plaintiffs as the non-moving parties. Except for deposition transcripts, and unless otherwise noted, pinpoint citations are to the court's ECF pagination.

the Route 309 North off-ramp in Upper Saucon Township, Pennsylvania, and was then involved in a three-vehicle accident with a tractor-trailer truck operated by Lebert and owned by Leego Trucking,[2] and a Toyota Land Cruiser operated by witness Peter M. Brown ("Brown"). See Doc. 1 ("Complaint") ¶¶ 23, 25-26.[3] Other than the location and vehicles and drivers involved, pertinent facts are disputed.

Fields testified at his deposition that the intersection of the Parkway and Route 309 is controlled by a traffic light, and that the westbound side of the Parkway he was traveling on consists of three lanes -- two left-turning lanes and one straight lane. Deposition of Ryan K. Fields, Docs. 28-2 & 29-2 ("Fields Dep."), at 48-49. Fields was in the right-hand, straight-only lane as he approached the intersection and brought his car to a stop behind Lebert's tractor-trailer, which was stopped at the red light. Id. Brown's vehicle then came to a stop behind Fields' vehicle. Id. at 48. While Fields car was still stopped, Lebert's tractor-trailer began reversing, made contact with Fields' car, and pushed his car backwards into Brown's car. Id. at 50. Fields testified:

> So as I'm waiting there waiting for the light to change
> I start hearing the beep, beep, beep backup sound that a truck
> makes when it's backing up, and am immediately like what in
> the world is going o[n], why is this -- why am I hearing that.

---

[2] At the time of the alleged accident, Lebert was the sole owner/operator of Leego Trucking, which Lebert founded in 2013. Deposition of Claude Anthony Lebert, Docs. 28-4 & 29-4 ("Lebert Dep."), at 13. Prior to forming Leego Trucking, Lebert worked as a self-employed truck driver in Jamaica. Id. at 10-11. Lebert had no accidents in a commercial vehicle in either Jamaica or the United States. Id. at 11-12, 46.

[3] At the time of the alleged accident, Fields' seven-year-old son sat in a car seat on the driver's side rear passenger seat of his vehicle. Complaint ¶ 24. He is not alleged to have sustained any injuries and is not a party to this action.

> And so I kind of looked to assess what can I do if he's actually gonna back up, and I can't really go anywhere at that point with [Brown's] SUV behind me. Um, so I put the car in reverse just to not fight against anything if he backs up, and then he starts backing up and rams into the front of me. And I can see that that's gonna happen in front of me, so I'm like gripping the steering wheel (indicating) to brace for that impact.
> Um, and I'm also -- I had also already been laying on the horn hoping that he would hear that and not back up, but -- the guy behind me [Brown] was also laying on the horn, but [Lebert] just continued backing up. And after he rammed the front of my truck, he just continued backing up and pushed me -- drove me into the SUV behind me, and that's when I sort of jerked forward with my neck and upper body area.
> And then he just proceeds to push both of us back about a hundred feet until . . . eventually he stops. And the guy behind me [Brown] backs up and pulls off to the side of the road, and I back up and pull off to the side of the road.

Id. at 50-51. Fields was able to drive his vehicle away from the scene. Id. at 64.

Brown similarly testified that he approached the stop light in the right-hand lane and came to a stop behind Fields' vehicle, which had stopped within a car length of Lebert's tractor-trailer. Deposition of Peter M. Brown, Docs. 28-3 & 29-3 ("Brown Dep."), at 11-12, 15-16, 35-36. Brown looked up and realized that the truck was backing up, and it backed into Fields' car. Id. at 12.

> [W]hen I looked up and realized that the car in front of me -- it felt almost like an optical [il]lusion, like I can't be possibly just sit[t]ing here [and] all of a sudden a car is coming towards me and I realized what was happening and then I just started hitting the horn in the hopes that he would stop before hitting me. But it was -- I couldn't -- it didn't appear that the car in front of me was like in reverse and coming back to hit me, you could tell from the speed that he was being pushed backwards.

3

Id. at 40.  Brown stated that the tractor-trailer backed up at a "pretty slow rate of speed," id. at 12, which he estimated to be "less than 5 miles an hour," id. at 16, 29, and that it pushed Fields' car backwards into the front of his car.  Id. at 15-16, 39.  Brown "started banging on the horn" at or just before the impact occurred with his vehicle, id. at 39-40, and his vehicle was pushed backwards -- with Fields' car sandwiched between Brown's vehicle and Lebert's tractor-trailer -- for "a couple of car lengths, probably 30 or 40 feet backwards before the truck stopped."  Id. at 39.  The incident caused no damage to Brown's vehicle, and Brown was not injured.  Id. at 16, 31.

Defendant Lebert does not dispute that he put his tractor-trailer into reverse, but provided a very different version of events.  He testified that after coming to a stop at the intersection and observing a "no right turn" sign, he intended to reverse to give himself enough space to pull his tractor-trailer off onto the soft shoulder of the road and give his GPS time to recalculate.  Lebert Dep. at 25, 45, 49.  He put his windows down, put on his hazard lights, checked both of his mirrors and, seeing no vehicles behind, began to back up.  Id. at 25, 31-34, 41, 45.[4]  He reversed an estimated ten feet, id. at 45, and did not feel an impact or contact with another vehicle when backing up, id. at 35, and he does not believe that he pushed any vehicles back.  Id. at 50; see also id. at 37 (expressing no "belief one way or the other" as to whether his tractor-trailer impacted the vehicle behind him).  According to Lebert, he did not see the cars belonging to Brown and Fields in his

---

[4]Lebert testified that his tractor-trailer had no rearview camera, Lebert Dep. at 16, and made no beeping sound when backing up.  Id. at 37.

mirrors until he pulled his tractor-trailer forward onto the shoulder of the road.  Id. at 35, 37.

Lebert did not receive any driving citations or violations as a result of the incident at issue.  Lebert Dep. at 46.  When asked about training he received to operate a tractor-trailer, Lebert stated that he underwent training on how to use his side-view mirrors and how to operate a tractor-trailer in reverse, but did not receive training on whether or how to operate a tractor-trailer in reverse while on a highway.  Id. at 32-33, 39-40.  Lebert agreed that if there were vehicles behind his tractor-trailer, it would be unsafe to start reversing the vehicle.  Id. at 39.

On January 31, 2024, Plaintiffs filed their Complaint in this matter, with Fields alleging negligence against Lebert (Count I) and asserting three claims against Leego Trucking -- vicarious liability (Count II), negligent and/or reckless hiring, retention, and supervision (Count III), and negligent entrustment (Count IV).[5]  Fields seeks punitive damages in all four counts.

Before the court is Defendants' motion seeking partial summary judgment as to Fields' claims for punitive damages, and summary judgment as to Counts III and IV of the Complaint in their entirety, Doc. 28-1, and Plaintiffs' response in opposition.  Doc. 29-1.

---

[5]In Count V, Plaintiff Christina Fields asserts a claim for loss of consortium against both Defendants.  That claim is not a subject of Defendants' motion.

## II.     LEGAL STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[6] A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A), (B). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., 998 F.2d 1224, 1240 (3d Cir. 1993)). Rather, the court must consider the evidence and all reasonable inferences which may be drawn from it, "in the light most favorable to the non-moving party." Matsushita Elec. Indus. Co. v.

---

[6]Anderson predated the 2010 Amendment to Rule 56. However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard. Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendment.

6

Zenith Radio Corp., 475 U.S. 574, 487 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  If a conflict arises between the evidence presented by the parties, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in [their] favor."  Anderson, 477 U.S. at 255.  "[W]hen evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary."  Burke v. TransAm Trucking, Inc., 605 F. Supp.2d 647, 651 (M.D. Pa. 2009).

### III. DISCUSSION

As noted, Defendants seek partial summary judgment as to Plaintiffs' punitive damages claims in Counts I through IV of the Complaint, and summary judgment in full as to Counts III and IV.  Plaintiffs contest the entirety of Defendants' motion.

As an initial matter, because this Court's jurisdiction is premised on diversity, the court must apply the choice-of-law rules of the forum state.  28 U.S.C. § 1332(a).  Under Pennsylvania choice-of-law rules, federal district courts sitting in Pennsylvania and exercising diversity jurisdiction generally apply Pennsylvania substantive law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Topkins, 203 U.S. 64, 78 (1938)); see also McLane Co., Inc. v. Varinderpreet, Civ. No. 09-1156, 2009 WL 4269086, at *2 (M.D. Pa. Nov. 24, 2009) (federal court sitting in diversity applied Pennsylvania substantive law to claims arising from a motor vehicle accident that occurred in Pennsylvania).  The parties do not dispute that Pennsylvania law applies.

With respect to the imposition of punitive damages, the Supreme Court of Pennsylvania has adopted the Restatement (Second) of Torts, pursuant to which

7

"[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984) (quoting Restatement (Second) of Torts § 908(2) (1979) and citing Chambers v. Montgomery, 192 A.2d 355 (Pa. 1963)); see also Hoffman v. Paper Converting Mach. Co., 694 F. Supp.2d 359, 374 (E.D. Pa. 2010) ("Under Pennsylvania law, punitive damages are appropriately awarded when a defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others."). A claim for punitive damages "must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, . . . in conscious disregard of that risk." Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 772 (Pa. 2005).

### A.   Punitive Damages Against Defendant Lebert

In Count I of the Complaint, Fields alleges negligence against Lebert and seeks both compensatory and punitive damages. In his motion, Lebert argues that "there is no evidence from which a jury could reasonably conclude that Lebert exercised the requisite level of culpability to award punitive damages under Pennsylvania law." Doc. 28-1 at 11. Fields takes the opposite view. Doc. 29-1 at 12-20.

As the summary of deposition testimony makes clear, the circumstances of the alleged accident involving Lebert's tractor-trailer and the passenger vehicles operated by Fields and Brown remain largely in dispute, such as whether Lebert attempted to ensure that there were no vehicles behind his tractor-trailer before he put it in reverse, and whether the tractor-trailer made contact with Fields' car and pushed it into Brown's car.

Because the outcome of trial will largely depend on the jury's assessment of these three individuals' credibility, it is plausible that the jury could conclude that Lebert acted recklessly in reversing his tractor-trailer on the highway into the vehicle directly behind him, pushing it and a third vehicle a distance of up to 100 feet. Lebert's primary caselaw support for his argument is clearly distinguishable. See Calhoun v. Van Loon, Civ. No. 12-458, 2014 WL 3428876, at *2-3 (M.D. Pa. July 11, 2014) (granting summary judgment as to punitive damages where truck driver reversed into another tractor trailer in parking lot at three miles per hour in rainy conditions). Because recklessness, if found, could support an award of punitive damages under Pennsylvania law, Defendants' motion is denied as to Count I.

### B. Punitive Damages Against Defendant Leego Trucking Based on Vicarious Liability

In Count II, Fields alleges negligence against Leego Trucking on the theory of vicarious liability, pointing to the same alleged conduct by Lebert as set forth in Count I, and again seeking both compensatory and punitive damages. Leego Trucking argues that it is entitled to summary judgment on this claim as to punitive damages "because there is no evidence that would permit for an underlying award of punitive damages against Defendant Lebert." Doc. 28-1 at 15.[7]

Under Pennsylvania law, "punitive damages may be awarded on the basis of vicarious liability." Burke v. TransAm Trucking, Inc, 605 F. Supp.2d 647, 657 (quoting

---

[7]Leego Trucking does not dispute that Lebert "acted in the course and/or scope of his employment at the time of the accident." Doc. 28-1 at 21.

9

Shiner v. Moriarity, 706 A.2d 1228, 1240 (Pa. Super. 1998) and citing Arias v. Decker Transp., Civ. No. 06-638, 2008 WL 450435, at *4 (M.D. Pa. Feb. 14, 2008); see also Stemrich v. Zabiyaka, Civ. No. 12-1409, 2014 WL 670919, at *4 (M.D. Pa. Feb. 21, 2014) (denying motion for partial summary judgment as to punitive damages on vicarious liability because it is well-settled under Pennsylvania law that punitive damages may be awarded on the basis of vicarious liability). Accordingly, an employer may be vicariously liable for the reckless conduct of an employee without proof that the employer's conduct also satisfies the standard for punitive damages. Livingston v. Greyhound Lines, Inc., 208 A.3d 1122, 1132 (Pa. Super. 2019) (citing Dillow v. Myers, 916 A.2d 698, 702 (Pa. Super. 2007)). Leego Trucking acknowledges this rule, and moves for summary judgment on the sole basis that Lebert's conduct does not rise to the level necessary for an award of punitive damages. Doc. 28-1 at 16.

I found in the previous section that the evidence is sufficient to allow the jury to decide whether Lebert's conduct supports an award of punitive damages. Should the jury find in Fields' favor on that issue, then Leego Trucking's vicarious liability for Lebert's conduct is also for the jury. Therefore, Defendants' motion for partial summary judgment as to punitive damages on the vicarious liability claim will be denied.

### C. Punitive Damages Against Defendant Leego Trucking Based on Reckless Hiring, Retention, Supervision and Entrustment

In Count III, Fields asserts negligence and/or reckless hiring, retention, and supervision against Leego Trucking, and in Count IV, Fields asserts negligent entrustment against Leego Trucking. In both counts, Fields again seeks punitive

10

damages. Leego Trucking argues that it is entitled to summary judgment on these claims for punitive damages "because there is no evidence from which a jury could reasonably conclude that Leego Trucking . . . exhibited the requisite level of culpability to award punitive damages." Doc. 28-1 at 16.

As a general rule, federal courts applying Pennsylvania law have held that a plaintiff cannot assert claims for negligent hiring, retention, or entrustment against a defendant if the plaintiff has asserted a claim against the same defendant on the theory of vicarious liability. See, e.g., Sterner v. Titus Transp., LP, Civ. No. 10-2027, 2013 WL 6506591, at *3-4 (M.D. Pa. Dec. 12, 2013) (predicting how Pennsylvania Supreme Court would rule, federal courts in Pennsylvania apply the majority rule and refuse to allow claims for negligent entrustment, supervision, monitoring, and hiring to proceed when the employer concedes that its employee was acting within the scope of employment when the accident occurred). "The rationale is that the employer's liability is a derivative claim fixed by a determination of the employee's negligence." Carstarphen v. Trotman, Civ. No. 24-5225, 2025 WL 904372, at *3 (citing Achey v. Crete Carrier Corp., Civ. No. 07-3592, 2009 WL 9083282, at * 8 (E.D. Pa. Mar. 30, 2009)).

However, this general rule has one exception, which is met when a plaintiff also has "a viable claim for punitive damages against the supervisor/employer defendant." Sterner, 2013 WL 6506591 at *3; see also Carstarphen, 2025 WL 904372, at *3 ("The lone exception to [the] general rule permits a direct liability claim on a theory of corporate negligence to proceed against an employer who has admitted agency 'when a plaintiff has a valid claim for punitive damages.'") (quoting Sterner, 2013 WL 6506591,

11

at *3); Allen v. Fletcher, Civ. No. 07-722, 2009 WL 1542767, at *4-5 (M.D. Pa. June 2, 2009) (summary judgment on claims of negligent hiring and supervision granted because plaintiffs did not claim punitive damages); Burke v. Transam Trucking, Inc., 605 F. Supp.2d 647, 657-59 (M.D. Pa. 2009) ("Given our finding that Plaintiffs' punitive damages claims go forward, we find summary judgment on Plaintiffs' negligent hiring, supervision, monitoring and entrustment claims inappropriate at this stage in the proceedings."); Fortunato v. May, Civ. No. 04-1140, 2009 WL 703393, at *5 (W.D. Pa. Mar. 16, 2009) (claims for negligent supervision and entrustment against supervisor defendants dismissed because plaintiff did not assert a claim for punitive damages against same defendants).

 Here, as previously discussed, Fields has viable claims for punitive damages against Lebert and Leego Trucking arising from the circumstances of the incident in question. Therefore, the exception to the general rule applies and Fields may pursue claims against Leego Trucking for negligent hiring, retention, supervision, and entrustment, alongside vicarious liability. Moreover, given Lebert's deposition testimony that he did not receive training on whether or how to operate a tractor-trailer in reverse while on a highway, Lebert Dep. at 32-33, 39-40, and his acknowledgment that it would be unsafe to do so if there were vehicles behind his tractor-trailer, id. at 39, it is conceivable that the jury could find the requisite culpability to impose punitive damages on Leego Trucking related to Lebert's hiring, retention, supervision/training, and

entrustment.[8] Accordingly, Defendants are not entitled to partial summary judgment as to punitive damages sought in Counts III and IV of the Complaint.

### D. Claims Against Defendant Leego Trucking Based on Negligent Hiring, Retention, Supervision and Entrustment

Lastly, Leego Trucking argues that it is entitled to summary judgment on Counts III and IV in their entirety because Fields' attempt to assert direct claims for negligent hiring, retention, supervision and entrustment against it are "futile and redundant under the circumstances of this case." Doc. 28-1 at 21. Fields counters that he has established evidence to support Leego Trucking's negligence and recklessness under theories of negligent hiring, retention, and supervision, as well as negligent entrustment. Doc. 29-1 at 25-29.

Leego Trucking's argument could be read in two ways. The first is that the claims against Leego Trucking are "futile and redundant" because there is no dispute that Lebert was acting in the course of his employment at the time of the accident and that he is the sole owner and operator of Leego Trucking, and that because the two Defendants are

---

[8]Plaintiffs also rely on their expert, Adam Grill, who identified certain alleged failures of Leego Trucking in the hiring, training, and supervision of Lebert. Doc. 29-1 at 25-26; Report of Adam Grill (Doc. 29-5) ("Grill Report"). According to Mr. Grill, Leego Trucking's alleged failures include not having a system to ensure that its drivers met regulatory safety requirements; not maintaining documents regarding driver qualification, drivers' hours of service, and vehicle inspection, repair, and maintenance; failing to deploy effective safety management systems and to submit documentation thereof; and not having policies and procedures in place to ensure regulatory compliance. Grill Report at 12-15, 23 (report pagination). Plaintiffs also note that Defendants have offered no expert testimony to rebut Mr. Grill's opinions. Doc. 29-1 at 26. In short, in viewing the record in the light most favorable to Fields as the non-moving party, it is clear that genuine issues of material fact exist, precluding entry of partial summary judgment.

essentially the same party, separate claims against Leego Trucking serve no purpose. I decline to endorse the proposition that an employee-defendant and an employer-defendant can merge into one entity in negligence cases, because such a rule would preclude plaintiffs from pursuing legitimate and meritorious claims against entities that may have independent responsibilities to plaintiffs.

Leego Trucking's argument can also be read to assert a related proposition -- Fields' claims against Leego Trucking for negligent hiring, retention, supervision and entrustment are "futile and redundant" under the circumstances of this case because if Fields were to succeed in his negligence claim against Lebert in Count I, he would necessarily succeed on his negligence claim against Leego Trucking in Count II under the principle of vicarious liability. Conversely, if Fields were to fail on his negligence claim against Lebert, then Fields' claims for negligent hiring, retention, supervision and entrustment against Leego Trucking would necessarily fail. Doc. 28-1 at 21-22. Therefore, Leego Trucking argues that allowing a direct negligence claim to proceed against it where there is potential liability premised on vicarious liability would be superfluous and also tend to confuse the jury. Id. at 22. I disagree.

In Stemrich, as here, the court was confronted with a personal injury action arising from an accident involving a tractor-trailer and a passenger vehicle, although in Stemrich the accident occurred on a rain-slicked roadway and the tractor-trailer struck the plaintiffs' car from the rear. 2014 WL 670919, at *1. Also as here, the plaintiffs in Stemrich asserted negligence claims against the tractor-trailer driver and on the trucking company-employer based on vicarious liability, as well as direct claims against the

14

trucking company-employer for negligent hiring, retention, supervision, and entrustment, seeking compensatory and punitive damages, and the defendants moved for partial summary judgment challenging plaintiffs' claims for punitive damages.  Id. at *1-2.  In denying the defendants' motion, the Court found that the record could support allegations that the tractor-trailer driver acted recklessly at the time of the accident in question, and separately that the trucking company-employer acted recklessly by, for example, operating in violation of numerous applicable regulations identified by the plaintiffs' expert.  Id. at *3-4.  Here, as in Stemrich, I conclude that genuine issues of fact exist as to whether Defendants acted with reckless indifference to the rights of others, and that the jury should be free to decide the question as to Lebert and Leego Trucking, separately.

I also disagree that allowing Claims III and IV to proceed would pose a risk of jury confusion.  This matter involves one plaintiff-driver and one defendant truck driver operating his tractor-trailer while working for the defendant-employer, under uncomplicated circumstances and straightforward vicarious and direct theories of liability.  Therefore, my decision to deny the present motion in its entirely is not likely to confuse the jury.

### IV.     CONCLUSION

Genuine issues of fact exist as to whether Defendants acted with reckless indifference to the rights of others, and therefore the jury conceivably could impose punitive damages on either Defendant.  The jury could also decide that Leego Trucking is liable for negligent entrustment, hiring, supervision, and retention, independent of its

consideration of its vicarious liability for Lebert's negligent driving. Therefore, Defendants' motion is denied.

    An appropriate Order follows.